Kathleen Weck, Office of the State Appellate Defender, representing the Juvenile Isiah D. Assistant State Attorney Katerina Derkova, on behalf of the people. May it please the Court. Good morning, Your Honors. Again, Kathleen Weck, Assistant Appellate Defender, representing the Juvenile Appellant Isiah D. With the Court's permission, just a few minutes for rebuttal, please. Thank you. I would like to focus my argument on the first issue, which is that Isiah's 2013 admission to aggravated discharge of a firearm could not be used to subject him to prosecution as a habitual or violent juvenile offender. But I will also be happy to answer any questions you have on the second argument we've raised on appeal. Isiah D. was prosecuted as a habitual juvenile offender and a violent juvenile offender and subjected to the harshest punishment available in juvenile court based partly on his admission to aggravated discharge of a firearm in a 2013 case. Isiah was still on probation for that offense when he was charged with robbery and aggravated battery in the new 2014 case, which is the subject of this appeal. The crux of Isiah's argument is that, pursuant to the case of Henry J.W., when a juvenile's prior admission is not knowing and voluntary, it is not sufficiently reliable to later use to establish that he is a habitual or violent juvenile offender. The Juvenile Court Act requires that for a juvenile admission to be considered knowing and voluntary, the record must show that the juvenile is aware of the consequences of his plea and the maximum penalty that can be imposed upon acceptance of the plea. The consequences of the plea that the juvenile must understand were articulated by the Illinois Supreme Court in Beasley, including that the record must show that the juvenile is waiving his right to trial, his right to confront his accusers, and his right against self-incrimination. And these admonitions are mandatory. The record from the 2013 proceedings shows that Isiah was not advised of the maximum penalty that could be imposed or adequately advised of the consequences of his plea. But, counsel, he was promised four months, and that's what he served, right? He was, but he was... I mean, are you arguing that because he didn't know that he could have served more, although he didn't serve more, then the admonishments were invalid? Well, clearly he was not admonished, as it was mandatory, of the maximum penalty that could be imposed for this plea, which was... And how is that prejudicial to him? What harm did he suffer from that? Well, he did not enter a knowing admission, for one. The main harm here is he was still on probation. In fact, to elaborate on the briefs, and maybe it was not clearly clarified, they didn't really discuss this in the trial court. The PD just said, you know, this wasn't the maximum sentence, 9 to 12 months, because, in fact, the maximum sentence penalty he faced for that aggravated discharge was commitment until he was 21. Well, that's not my question, though. My question is, what was the harm that he suffered by the claimed lack of a complete or appropriate admonishment? Well, the harm didn't necessarily flow from that plea itself, because we could go hypothetically, say that he had not been adjudicated delinquent in the 2014 case. Perhaps by the preponderance of the evidence, they still could have proven up a probation violation, in which case he would have ended up in juvenile jail for a longer time. I'm not asking a hypothetical question. I'm asking a specific question. What was the harm that he suffered as a result of this lack of, this supposed lack of complete and appropriate admonishment? I think the harm is the fact that he is a juvenile that did not have his due process rights when he made that admission. Just that he is entitled as a juvenile to all the due process that an adult is entitled to. And, in fact, because he's a juvenile, it's important that the admonitions be scrupulously given to the juvenile because he has a lessened understanding of his legal rights. So the greater picture is the juvenile, the admonitions are mandatory because of the harm that can flow from it. Let's say an adult defendant is not given their proper admonishments. Is that a grounds for something? It's the grounds to move to withdraw the plea. So could he have done that here? He could have within 30 days, but then, of course, because he does not have the right to file a post-conviction petition, he has lost that right. That was my next question. Why are juveniles not given the right to do post-conviction and adults are? Because the juvenile process is supposed to be more... But a juvenile has less rights than an adult defendant. He actually does. He actually does seem to have less rights, but then he's... the consequence is still for the juvenile is, here, he's being held to the harshest punishment until he's 21. Until he's 21. Right. So isn't that an unusual circumstance? We're supposed to consider Miller v. Alabama, the uniqueness of youth and all that, and here we don't even give them the ability to have post-conviction relief. No. It just seems that admonitions in a juvenile case, because of the fact that they're children, they have to be scrupulously given to them because, you know, this has been the case of this Emory M.W. cited, Peavey, Timothy P., of the consequences that can happen to a juvenile, particularly since they don't... they do lose the right to challenge the admission. Now, the analysis in J.W. was based on this case of Baldazar v. Illinois at the time, which an uncounseled misdemeanor conviction could not be used for later sentencing enhancement purposes. So clearly the appellate court at that time was looking at... that was not considered a reliable prior conviction, could not be used for recidivism or sentencing enhancement purposes. So they're going with the idea that juveniles, particularly in a juvenile context, we have to be assured of the reliability of the prior admissions because of the consequences that are eventually developing of charging them under these recidivism three strikes and you're out laws. So although the... I think I explained what is... I guess the logical inference from your argument is that had he known... had he been properly admonished, maybe you wouldn't have pled guilty? Is that what you're saying? Sure. I mean, he should have been told. In fact, if this case hadn't even arisen, clearly it's very likely he could have had his probation revoked and been sentenced to juvenile prison for up to the age of 21 since it was the equivalent of a Class I felony offense that he was charged with and adjudicated delinquent of in 2013 when he admitted to it. And it was not a knowing and voluntary admission under the standards required by Beasley and the Juvenile Court Act. So for these reasons, we're giving almost an extra procedural grounds here in JW, it appears, to allow juveniles, you know, more flexibility in the juvenile courts when we cannot be assured of the reliability of the prior admonishments that it was a voluntary and reliable plea for recidivism purposes to make it work better for them. Can you address the state's argument that Henry J.T. controls and not JW? Certainly, Your Honor. J.T. was involved a juvenile who wanted to go back and try to move to withdraw his plea and actually have it vacated, but he had lost the boat because he didn't have the right to the Post-Conviction Act and it's beyond 30 days. Even though he was not given the proper admonishments of how to move to withdraw his plea, it was too late. But J.T. was concerned with you have to have jurisdiction to move to withdraw the plea. This is a different case. We're not seeking to withdraw the admission in 2013. We're just saying it was not sufficiently reliable on its own to use for the subsequent purpose of habitual and violent juvenile offender act. It's similar, you know, you can still look at the prior proceedings. I believe this still happens maybe with DUI cases where they look back to a prior misdemeanor if they're going to use it to enhance it later. Was it a counseled misdemeanor that resulted in jail time or not? If it resulted in jail time and it was uncounseled, even the case that followed Baldazar and Nichols, you can't use that for sentencing enhancement purposes. If it was an uncounseled felony conviction with not a knowing waiver of your right to counsel, that I believe is still the law in the federal courts that you can't use that prior conviction that's not considered reliable enough for later enhancement purposes. So there's no reason why we can't consider the proceedings underlying it when we're not actually seeking to vacate that admission. So are you saying that under J.T. the admonishments given in a prior case can be collaterally attacked at any time? Is that your position? J.T. was concerned with the 605 admonitions about withdrawing the plea. It was not going to, in my recollection, the actual Juvenile Court Act requirements of knowing the maximum penalty and the consequences of the plea. So we're not attacking those per se. We're just looking at them and saying they were not sufficiently reliable to use for this collateral purpose, which is a different issue than trying to vacate it. It's perhaps similar also to what's going on right now with the firearm issues with the void Abelard counts that have triggered a later unlawful use of a weapon or armed official criminal count where we're not necessarily going back and trying to vacate the firearm. For this case, counsel, are you saying that the defendant can collaterally attack the admonishments that the court made in the 2013 case now or next year or at some later time because the admonishments were inappropriate, incomplete, unconstitutional, whatever term you want to use, although that plea was not he didn't try to do that within 30 days. You're saying the 30-day rule doesn't matter. He can attack it at any time because he's a juvenile. Is that your argument? Well, under the authority of JW, this is exactly what happened. I'm just trying to get your argument. Yes. Under the authority of JW, which this is a well-litigated issue in the trial court level, and here on appeal, preserved for appeal, when a juvenile did not have a knowing and voluntary admission because he was not given the admonitions he was required to understand, then that admission cannot be used for the later purpose of establishing habitual juvenile offender or violent juvenile offender status. So under the authority of that case, that's exactly what's going on here. It's giving juveniles a little bit of a benefit of a doubt because of their age and giving the sentencing judges apparently some discretion to look at whether habitual juvenile offender, violent juvenile offender prosecution is appropriate in the case. Okay. So Isaiah asked this court to vacate his sentence imposed under the habitual and juvenile, violent juvenile offender statutes and remand for an individualized sentencing hearing. Thank you. Thank you. May it please the court. Again, this is Assistant State's Attorney Katerina Durkova on behalf of the people. Respondent has been found a violent and a habitual juvenile offender due to his prior adjudications for aggravated discharge of a firearm in 2013 and possession of a stolen motor vehicle in 2012. He is now attempting to collaterally attack these prior adjudications without having previously timely appealed his ADFA adjudication. As a preliminary matter, I do want to point out an error in our brief. During preparation for this argument, it has become clear that respondent need not have filed a post-trial motion to preserve this issue for appeal. As such, waiver does not apply in that context and I do apologize for the error. However, with respect to the respondent's substantive claim, it is clear that the Illinois Supreme Court's case in JT is directly on point and is completely dispositive of the instant claim. Can you speak to INRI JW? That's the case that the defendant relies on and I'd like to hear what you have to say. Why is that not applicable to these facts? INRI JW has effectively been overruled by JT. The court in INRI JW was an appellate court which did not evaluate its own jurisdiction to consider this predicate underlying adjudication. As such, that case is no longer good law. Can you say that's a case that they specifically overruled, JW? They do not explicitly say that, Your Honor. However, pursuant to JT, the appellate court is required to evaluate its own jurisdiction when a respondent is collaterally attacking a prior adjudication that he did not timely appeal. Here, as in JT, respondent did not file a motion to withdraw his guilty plea and he did not file timely notice of appeal. The Illinois Supreme Court in JT explicitly stated that an appeal is perfected by the timely filing of a notice of appeal which vests the appellate court with jurisdiction. That was a request to withdraw the plea. Yes, Your Honor. This is not in this case. Your Honor, the effect of what respondent is asking for, it is the same exact. It would have the same exact effect in the instant case. It's no different. He is trying to attack collaterally an underlying prior adjudication even though he had the opportunity and the ability to previously appeal that prior adjudication. He did not appeal or challenge this prior adjudication until he violated his probation, and then he noticed that his admonishments during the guilty plea to the aggravated discharge of a firearm were allegedly insufficient. And were they insufficient? No, Your Honor. The trial court in the instant case substantially complied with the requirements. Did he say what the max was? Did not, Your Honor. Is that compliance then? Your Honor, there is no prejudice in the instant case. Did the case say there must be prejudice? Yes, Your Honor. Pursuant to the Illinois Supreme Court in Fuller, the Illinois Supreme Court stated that where a defendant is not sentenced to a penalty beyond that of which he is advised. Child. Yes, Your Honor. Yes, Your Honor. But to comply with the due process requirements, all that is required is substantial compliance with the admonishments. So a defendant, a criminal defendant who is an adult has more rights than a criminal juvenile. Yes, Your Honor. But that is because the juveniles have fewer rights because they are treated much more leniently and they are kept in the juvenile court system, which provides them many benefits at rehabilitation and other programs that they can take advantage of. How many years? I forget how old he was in sentencing. But until 21, no freedom. He was incarcerated. Your Honor, the respondent was 17 years old at the time. Okay. 16. I believe he might have been 16 at the time of the ADFA adjudication. And then he was 17 at the time he was deemed a habitual and a violent juvenile offender. Under the HJO and the VJO provisions, juveniles receive good conduct credit. Therefore, if he's behaving in juvenile detention, he will get out well before he is 21 years old, Your Honor. Counsel, we don't know what's going to happen. But he was sentenced to a period of non-freedom for almost three years, if not more. His liberty has been taken away from him. However, he is still in juvenile court. And that's a lot nicer than other courts? I mean, as far as incarceration, your freedom is deprived, no freedom of movement? Yes, Your Honor. The respondent in the instant case, the trial court explicitly stated during his HJO and the VJO hearing that if anyone deserved to be in juvenile incarceration until 21, it would be this juvenile offender. Did the trial court know about the lack of admonishments in the prior case? Yes, Your Honor. The trial court did know. Yes. There was a hearing in the trial court regarding those admonishments. The trial court found that those admonishments were sufficient. In addition, the trial court actually did not have jurisdiction to consider those admonishments. All the respondent could challenge was whether the prior adjudication qualified him for the HJO and the VJO provisions. In the instant case, as I mentioned, the trial court substantially complied with the requirements of the admonishments. The respondent was advised that there would be no trial if he pleaded guilty. He would be giving up his right to confront witnesses against him and his right against self-incrimination. With respect to the penalty, the respondent was told the exact sentence that he received. He was told he would serve four months in the DOC with a bring back. If he came back with a positive report, he would only have to serve probation. I know, but if he came back with a negative report, was he told what would happen then? Yes. He was? Yes. He said he could be incarcerated until he was 21? He was not told that, but he was told that he would be incarcerated for 9 to 12 months depending on the guidelines that the DOC has. What I'm saying is he wasn't told the maximum. Yes, Your Honor. However, all that is required is substantial compliance with the admonishment. That's a pretty big part of compliance though, is it not? What you're looking at possibly? Yes, Your Honor. There's a big difference between 12 months and three or four years, I'd say, especially in the life of a juvenile. So can you reasonably argue that if he knew that he may have to serve 12 months, that suffices for letting him know that he may have to serve three or four more years? Can you really make that leap? Pursuant to the Illinois Supreme Court and Fuller, again, respondent just cannot show any prejudice. What's the year of Fuller? What's the year of that? Fuller is from... Sorry, Your Honor. If not, that's okay.  Thank you, Your Honor. I apologize. No problem. Thank you. What this case boils down to is JT and this court's jurisdiction to even consider respondent's collateral attack on his prior adjudication. As you mentioned, if he was unhappy with his admonishments during this prior adjudication, during the prior guilty plea, he should have moved to withdraw his guilty plea and he should have appealed. Do you think they're aware of what the admonishment should be, a juvenile? He was represented by counsel during that plea hearing, Your Honor. In addition, the Illinois Supreme Court has clearly upheld the constitutionality of the HJO and the VJO provisions under the Eighth Amendment and under the Proportionate Penalties Clause. This was in the Illinois Supreme Court's ruling in Kroska. The Illinois Supreme Court explicitly stated that it was legitimate for the legislature to conclude that a juvenile who had committed three serious offenses had benefited little from the rehabilitative measures of the juvenile court system and as such the HJO provision was constitutional. This court is bound by the Illinois Supreme Court's pronouncement in Kroska. And for that reason, respondent cannot meet his strong presumption that the HJO and the VJO provisions are constitutional. As such, because this court has no jurisdiction to consider respondent's collateral challenge to his underlying predicate, aggravated discharge of a firearm adjudication, and because the Illinois Supreme Court has already affirmed the constitutionality of the HJO and the VJO provisions, we ask that you affirm the trial court's ruling. Thank you. Just briefly, if I may, encourage your honors for the second argument on the habitual juvenile offender. The Kroska recognizing that that remains the law and has not been overruled, but encourage your honors to look at something like Tremaine S in which the appellate court did just weigh in on the issue. It's right for reconsideration. Yes, they did. Just want to say that Fuller is an adult case. Here we're talking about a juvenile case. There's never been any weighing in on the prejudice. In fact, it seems pretty clear from the few cases that there are, Timothy P, M.W., P.V., that. Ms. Weick, your argument seems to suggest that this juvenile knew that he was likely to commit some other crime. So if he had known that, he wouldn't have pleaded guilty. Is that what you're suggesting? It sounds like you're saying that had he known that there would be another, that this could be used as a basis for finding him to be a habitual offender and a violent juvenile offender, he wouldn't have pleaded guilty because the likelihood that he was going to do something else was great, so he didn't want to place himself in jeopardy. I mean, that's kind of the logical way that your argument is going. Is that what you're suggesting? I'm not really suggesting that specifically, Your Honor. I'm really just saying that the admission he made in the 2013 case was not knowing and voluntary. It was not a known waiver of known rights that he was doing in that case. We don't know what he anticipated. We do know that the case in which he's involved with seems to have been a very spur-of-the-moment offense, involved with others, and again, this is certainly showing a juvenile's peer group pressure, impulsivity, unawareness of plan for consequences. Again, a juvenile, when he's making this admission, doesn't understand his legal rights, no matter what. He's a young man. He's just, you know, the concern here is that juveniles are getting railroaded through the system or being led down the primrose path, thinking everything's just fine and dandy in juvenile court, and if he does screw up here, doesn't have a good report, he goes back for 9 to 12 months, when in fact he could go back for up until the age of 21, which ultimately is what happened in this case. I mean, but they are sending him in for a crime that he committed. I mean, you're kind of making light of that, but I don't think that that's what happened here. He didn't violently knock a kid to the ground and take his bike. No, I don't mean to make light of it. I'm just showing the impulsive nature of the offense from the trial is the kind of thing that juveniles often, as brain science has shown about their limited ability to face the consequences of their actions, which is why they are treated in the juvenile court system, why the admonitions given to them when they do plead guilty to offenses need to be scrupulous so that they're not railroaded into something that is going to come back and have really dire consequences, such as restricting their liberty to move about anywhere in the state until they're 21 years old, which is a very long time for a young man. Thank you very much, Your Honors. Thank you. Thank you. This case will be taken under advisement, and the court stands in recess.